Appeal from Trial Term, New York County.

Action by Alfred W. Duckett against Charles F. Hofferberth. From a judgment granting insufficient relief, and from an order denying a new trial, plaintiff appeals. Affirmed.

See, also, 143 N. Y. Supp. 1114.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Joseph M. Herzberg, of New York City, for appellant.

Samuel H. Evins, of New York City, for respondent.

PER CURIAM. We think that the plaintiff failed to sustain a cause of action for malicious prosecution. So far as any prosecution was instituted by the defendant, the plaintiff failed to show a lack of probable cause, and the complaint should have been dismissed. Under such circumstances, the court is not required to reverse a verdict for the plaintiff for one cent.

The judgment and order appealed from should be affirmed, with costs.

---

(159 App. Div. 644.)

### In re MONTEFIORE HOME.

(Supreme Court, Appellate Division, First Department. December 19, 1913.)

1. TAXATION (§ 197*)—EXEMPTIONS—REPEAL BY GENERAL TAX LAW.

The General Tax Law (Laws 1896, c. 908), effective June 15th of that year, repealed by implication all prior exemptions from taxation contained in general statutes or in special acts.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 315, 316; Dec. Dig. § 197.*]

2. STATUTES (§ 158*)—REPEAL—IMPLIED REPEAL.

Repeals by implication are not favored.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 228; Dec. Dig. § 158.*]

3. TAXATION (§ 197*)—EXEMPTIONS—STATUTES—EXCEPTION TO GENERAL TAX LAW.

Laws 1897, c. 620, § 1, specially exempting from assessment the realty of a home for chronic invalids, so long as it should be used exclusively for charitable and benevolent purposes, following General Tax Law (Laws 1896, c. 908), which repealed by implication all prior exemptions from taxation so far as inconsistent therewith, operated as an exception to the general law so that its provisions were paramount thereto.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 315, 316; Dec. Dig. § 197.*]

4. TAXATION (§ 197*)—EXEMPTIONS—STATUTORY PROVISIONS.

General Tax Law (Laws 1896, c. 908) § 4, subd. 7, which impliedly repealed prior special exemption acts, was re-enacted by Tax Law (Consol. Laws 1909, c. 60) § 4, subd. 7, without including in the schedule of the laws repealed Laws 1897, c. 620, § 1, expressly exempting the real property of the M. home for invalids so long as exclusively devoted to charitable uses. Chapter 596 of the Laws of 1909, entitled "An act to prescribe the rules for the construction of the Consolidated Laws," etc., provided that the intent of the act was that the statute law of the state was carried into the Consolidated Laws so far as reproduced therein, and that all special laws in force at the time of their enactment should have the same force as before such enactment. *Held*, that the special exemption was not re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pealed directly or indirectly by the enactment of the Consolidated Laws and was in full force and effect.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 315, 316; Dec. Dig. § 197.*]

5. TAXATION (§ 497*)—EXEMPTION—MANDAMUS TO ENFORCE.

Laws 1897, c. 620, § 1, provided that the real estate then or thereafter owned by the M. home for chronic invalids should be exempt from assessments as long as used exclusively for its charitable purposes, and that the officers in charge of assessments were thereby required and directed to cancel any assessments against it from the records of any department where it might exist. Section 221a, added to the Greater New York Charter (Laws 1901, c. 466) by Laws 1909, c. 388, limited by its terms to the exemptions under Tax Law (Consol. Laws 1909, c. 60) § 4, subd. 7, conferred a discretionary power on the commissioners of the sinking fund to cancel assessments against corporation entitled to an exemption. *Held*, that the charter amendment did not furnish the only method of cancellation, and that, as the special act imposed a positive legal duty on officers in charge of assessments, mandamus would lie to require them to cancel the record of an assessment against such corporation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 911, 912; Dec. Dig. § 497.*]

Appeal from Special Term, New York County.

Application by the Montefiore Home for Chronic Invalids for mandamus against William A. Prendergast, as Comptroller of the City of New York, and others. From an order denying the writ, petitioner appeals. Reversed, and motion granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Stroock & Stroock, of New York City (Louis Marshall, of New York City, of counsel, and Moses J. Stroock and Edward F. Spitz, of New York City, on the brief), for appellant.

Archibald R. Watson, Corp. Counsel, of New York City (Charles J. Nehrbas, of New York City, of counsel, and Terence Farley, of New York City, on the brief), for respondents.

CLARKE, J. The petitioner is a domestic corporation organized, under the laws of the state of New York, April 21, 1884, under an act entitled "An act for the incorporation of benevolent, scientific and missionary societies," passed April 12, 1848 (Laws 1848, c. 319), and the acts amendatory thereof and supplemental thereto. The purposes of petitioner's incorporation are to afford permanent shelter in sickness and to relieve invalids who, by reason of the incurable character of the diseases from which they may be suffering, are unable to procure permanent medical treatment in any of the hospitals or homes of the city of New York, and also to care for and treat invalids suffering from consumption and tubercular ailments. All treatment offered by petitioner to its patients and other applicants for relief is wholly gratuitous. It does not receive any pecuniary aid from the city of New York but is maintained exclusively by private, voluntary contributions. It is organized and maintained solely for benevolent and charitable purposes and ever since its incorporation has employed its income exclusively for such purposes.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On the 10th of February, 1910, petitioner acquired in fee simple a certain parcel of land in the borough of the Bronx which has been owned and held by petitioner exclusively for its corporate charitable and benevolent purposes. While thus held there was made and entered against it, upon the records of the city of New York, an assessment for regulating and grading Rochambeau avenue, 212th street to Van Courtlandt avenue, of $597.28. The hospital duly petitioned the comptroller, the corporation counsel, and the collector of assessments and arrears to cancel and discharge the said assessment from the records of the various city departments where it now exists and, the request having been refused, applied for a mandamus to compel compliance by these officials with the request. The motion having been denied, this appeal is taken.

[1] The General Tax Law (chapter 908 of the Laws of 1896, passed on May 27th and going into effect on June 15th of that year) has been held to have repealed by implication all prior exemptions from taxation contained in general statutes or in special acts. Matter of Huntington, 168 N. Y. 399, 61 N. E. 643; Pratt Institute v. City, 183 N. Y. 151, 75 N. E. 1119, 5 Ann. Cas. 198; People ex rel. Roosevelt Hospital v. Raymond, 194 N. Y. 189, 87 N. E. 90.

[2, 3] But a year after the passage of said General Tax Law the Legislature enacted chapter 620 of the Laws of 1897, which provides as follows:

"Section 1. The real estate now owned or which may be hereafter acquired by the Montefiore Home for chronic invalids, a corporation created by and under the laws of the state of New York for charitable and benevolent purposes, shall so long as said property shall be held or used exclusively for the charitable and benevolent purposes of said corporation be exempt from any and all taxes, assessments and water rates heretofore or hereafter imposed, assessed or levied; and the officer, officers and official bodies having charge of such taxes, assessments and water rates, are hereby required and directed to cancel and discharge any and all of such taxes, assessments and water rates from the records of any department wherein they now or hereafter may exist.

"Sec. 2. This act shall take effect immediately."

This statute having been passed after the General Tax Law, by an independent exercise of legislative power, created an obvious exception to the general provisions therein contained. It seems to come directly within the principle laid down in Matter of Murray Hill Bank, 153 N. Y. 199, 210, 47 N. E. 298, 301:

"So far as the special and later statute is necessarily inconsistent with the general and earlier statute, the provisions of the former are paramount. Townsend v. Little, 109 U. S. 504 [3 Sup. Ct. 357, 27 L. Ed. 1012]; Titcomb v. Union, etc., Ins. Co., 8 Mass. 326; Isham v. Bennington Iron Co., 19 Vt. 230; Crane v. Reeder, 22 Mich. 322; State ex rel. Fosdick v. Perrysburg, 14 Ohio St. 472; London C. & D. R. Co. v. Wandsworth Board of Works, L. R. (8 C. P.) 185; Dwarris on Statutes, 513, 668. In order to avoid a repeal by implication, which is not favored by the courts, the later act, or the particular provision, is regarded as an exception to the earlier statute or the general provision."

In 1901 section 18 of article 3 of the Constitution was amended to provide that the Legislature shall not pass a private or local bill "granting to any person, association, firm or corporation, an exemp-

tion from taxation on real or personal property." This provision, of course, had no retroactive effect and left untouched the special statute of 1897 under consideration.

[4] In 1909 the Consolidated Laws were passed, of which chapter 62 of the Laws of 1909, chapter 60 of the Consolidated Laws, is the Tax Law. Subdivision 7 of section 4, entitled "Exemptions from taxation," of the General Tax Law, which was the provision held in the cases cited, supra, to have impliedly repealed prior special exemption acts, was re-enacted in said Tax Law. It is urged that the effect of this re-enactment was to likewise impliedly repeal such special acts passed during the interval between the enactment of the General Tax Law of 1896 and the Consolidated Laws in 1909. Chapter 620 of the Laws of 1897 is not included in the schedule of laws repealed. Chapter 596 of the Laws of 1909, entitled "An act to prescribe the rules for the construction of the Consolidated Laws," etc., provides:

"The true purpose and intent of this act is to prescribe that the statute law of the state, so far as it has been reproduced in such consolidated laws. * * * and all special laws in force at the time of the enactment of such Consolidated Laws, shall be of the same force and effect as they were before the enactment of such consolidated laws. * * *"

Chapter 620 of the Laws of 1897 has therefore not been repealed directly or indirectly and is therefore still in full force and effect. It follows, therefore, that by the exemption provided in said act the assessment here complained of was, without warrant of law and against the direct provision of the statute, laid upon the petitioner's property.

[5] The question then arises whether the remedy here sought, a writ of mandamus to compel the officers to cancel the record of said assessment, is proper. The respondents claim that property owners have attempted by every form of action or proceeding known to the law to obtain the vacation or discharge of void assessments, but that in every case it has been held that the court is without power to grant relief, citing a number of cases, and that these cases are all based upon sections 958, 960, and 962 of the charter (Laws 1901, c. 466). They also claim that section 221a, added to the charter by chapter 388 of the Laws of 1909, providing that:

"The commissioners of the sinking fund of the city of New York, upon the written certificate of the comptroller of said city approving the same, with whom such application for relief under this section shall be filed, may in their discretion and upon such terms as they may deem proper, by a unanimous vote cancel and annul all taxes, assessments and Croton water rents and sales to said city of any or all of the same which now are or may hereafter become a lien against any real estate owned by any corporation, entitled to exemption of such real estate owned by it from local taxation under article one, section four, subdivision seven of the Tax Law, which was the actual owner of such real estate and entitled to such exemption, during the time when the taxes, assessments or Croton water rents for which it asks relief accrued and became liens thereupon. The comptroller of the city of New York shall mark the city's books and rolls of taxes, assessments and Croton water rents in accordance with the determination of the said commissioners of the sinking fund in every case in which action shall be taken under the provisions of this act"—

furnishes the only method for the cancellation of an assessment.

The answer to both contentions, it seems to me, lies in the statute under consideration. So far as the section 221a is concerned, this

charter provision is limited in application, by its very terms, to the exemptions under subdivision 7 of section 4 of article 1 of the Tax Law, and confers a discretionary power on the commissioners of the sinking fund by a unanimous vote, while the special act grants an absolute exemption from all forms of taxation. So far as the other sections of the charter referred to are concerned, the answer is again that by the act under consideration a positive, legal duty is placed upon the officers "having charge of such taxes, assessments and water rates," and they are "required and directed to cancel and discharge" the same from "the records of any department wherein they now or may hereafter exist."

As we have held that the said act has not been repealed either directly or impliedly, and as by said act the assessment is without warrant in law, and as a legal duty has been imposed upon the respondents to cancel the record of such illegally laid assessment, it follows that, for the enforcement of such prescribed legal duty, the writ of mandamus is the appropriate remedy. The act is clear, positive, and direct. It is evidently the product of a careful and informed draughtsman. There is no doubt as to its intention, and nothing is left for inference or construction. The statute conflicts with no constitutional provision, was within the power of the Legislature to enact, and remains upon the statute book unaltered, unamended, and unrepealed, and must be enforced by the court and obeyed by the public officers at whom it is directed.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion for a peremptory writ of mandamus granted, with $10 costs. All concur.